UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH J KUHL,<br><br>               Plaintiff,<br><br>     v.<br><br>DENIS MCDONOUGH,<br><br>               Defendant. | Case No.  23-cv-05604-LJC<br><br>**ORDER REGARDING MOTION TO DISMISS**<br><br>Re: Dkt. No. 12 |

I.    **INTRODUCTION**

Plaintiff Sarah Kuhl, pro se, brings this action Defendant Denis McDonough, Secretary of Veterans Affairs (the Secretary), alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, among other claims.  The Secretary moves to dismiss Kuhl's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  ECF No. 12.

The Court previously found the Motion to Dismiss suitable for resolution without oral argument.  For the reasons discussed below, the Secretary's Motion to Dismiss is GRANTED as to Kuhl's Title VII and Age Discrimination in Employment Act (ADEA) claims, but DENIED to the extent that it seeks dismissal of other claims not addressed in the Secretary's briefing.[1]  Kuhl may file an amended complaint no later than August 14, 2024.[2]

---

[1] The parties have consented to the jurisdiction of a magistrate judge for all purposes under 28 U.S.C. § 636(c).

[2] The Court previously granted in part Defendant's Administrative Motion Regarding General Order 71 Disclosures, ordering the parties to make their initial disclosures no later than fourteen days following the deadline for Defendant to file an answer.  ECF No. 28.

United States District Court
Northern District of California

## II.    BACKGROUND

### A.    Allegations of the Complaint

Because a plaintiff's factual allegations are generally taken as true in resolving a motion to dismiss under Rule 12(b)(6), this section summarizes Kuhl's allegations as if true.  Nothing in this Order should be construed as resolving any issue of fact that might be disputed at a later stage of the case.

Kuhl is a physician and scientist who has been employed by the Department of Veterans Affairs (VA) in various roles since 1998.  ECF No. 1 (Compl.) at 5.[3]  She worked as an allergist, infectious disease physician, and medicine ward attending physician at the Sacramento VA office from 1998 to 2008.  *Id.*  She was chief of infectious diseases from 1999 to 2006 and chair of infection control from 2005 to 2008.  *Id.*

During that time, Kuhl "realized that all the medicine subspecialty physicians were given much more time for equivalent work, and for teaching and research."  *Id.* at 8.  She "asked for equal pay for equal work," but she "was told that did not exist for title 38,"[4] and the chief of medicine assigned her additional duties.  *Id.*  Kuhl worked between sixty and eighty hours per week in a part-time job that she had been told was a permanent position.  *Id.*  She received "exemplary evaluations every year until 2006."  *Id.*

In 2006, the chief of medicine gave Kuhl a negative performance review, even though he was not her supervisor.  *Id.* at 8.  He claimed that Kuhl did not get along with others, based on Kuhl having objected to removing a tuberculosis patient from isolation, and disputed Kuhl's report that a cardiologist screamed at Kuhl's infection control nurse.  *Id.* at 8.

In 2008, someone identified in the Complaint only as "Dr. S"[5] terminated Kuhl's

---

[3] Unless otherwise noted, this Order refers to page numbers as assigned by the Court's ECF filing system.

[4] This presumably refers to Title 38 of United States Code (pertaining to veterans' benefits), the corresponding title of the Code of Federal Regulations, or some other authority deriving its designation from those code titles, but the exact reference is not clear from Kuhl's Complaint.

[5] Based on an attachment to the Complaint, it appears that Dr. S's surname is Siegel.  Compl. at 14.  In any amended complaint, Kuhl is encouraged to use full names of relevant individuals for clarity, unless she believes special circumstances warrant the use of pseudonyms.  If her amended complaint attaches or refers to other documents that identify relevant individuals by pseudonyms, she should explain which pseudonyms refer to which individuals, unless there is some basis to

United States District Court
Northern District of California

United States District Court
Northern District of California

employment, while Dr. S was serving as acting chief of staff before a "Dr. C" took on that role. *Id.* at 8.  The memorandum terminating her employment included "exaggerated claims that did not meet criteria for removal." *Id.* at 8.  Kuhl had missed a flight for a conference, resumed her work in the clinic when she was supposed to be at the conference, gotten involved in a car accident, and shouted at a nurse. *Id.* at 14.  Kuhl asserts that if she had held a full time or (as she had been told) permanent position, she could not have been removed for the reasons given. *Id.* at 8.  She believes that her termination was retaliation for a previous administrative charge of gender discrimination. *Id.* at 14.

After she was fired, Kuhl moved her lab work (for which she was not paid) to Martinez, and she started working on a fee basis in an allergy clinic in 2009 without health insurance or other benefits. *Id.* at 8.  Someone—it is not clear who—promised to hire three nurses for Kuhl "once the clinic got going," but the first nurse was not hired until 2016, and that nurse bullied Kuhl and expected Kuhl to do the nurse's work. *Id.* at 14.[6]  Kuhl "was also bullied by [a] nurse manager who sometimes only staffed for vital signs and expected [Kuhl] to do the remainder of the nursing duties, as well as screaming in [Kuhl's] face and physically threatening [her]." *Id.* at 14.

Dr. S approved Kuhl's pay for the allergy clinic, which did not change from 2009 to 2019. *Id.* at 8.  Kuhl asserts her work at the clinic should have been paid on a part-time basis rather than on a fee basis. *Id.* at 8.  Two other allergists—Dr. N in Martinez and Dr. R in Redding—were both hired on a part-time basis with benefits in 2019, and Dr. N received significantly more nursing support than Kuhl, allowing Dr. N sufficient time to keep up with medical notes. *Id.* at 8.  As far as Kuhl is aware, the only other physicians paid on a fee basis were also collecting retirement benefits. *Id.* at 8.

---

preserve those individuals' anonymity.
[6] Construing Kuhl's Complaint liberally, the Court infers that she intended to incorporate by reference the allegations of an administrative charge that Kuhl attached to her Complaint, at least to the extent that those allegations in the administrative charge support the claims and allegations in her judicial Complaint.  *See* ECF No. 1 at 13–14.  If Kuhl files an amended complaint, she should include all relevant facts on which she bases her claim in the amended complaint itself, although she may also attach exhibits as may be relevant to support those allegations.

In 2015 or 2016, Kuhl was hired for a part time urgent care position on a temporary basis for one year. *Id.* at 8–9; 14. After a year, she was told that the VA would not convert it to a permanent position because Kuhl was late on her notes from the allergy clinic "and they wanted more unpaid labor for [the] allergy clinic." *Id.* at 8–9, 14. When Kuhl wanted to apply to make that position full time, she could not obtain the position number she needed from the human resources department or from Dr. S's administrative assistant "CK." *Id.* at 9. CK attempted to prevent other doctors from hiring Kuhl, and she disregarded Kuhl's previous employment at the VA when setting Kuhl's salary. *Id.* at 9. Kuhl's medical notes for urgent care have been timely since 2016, but she still has not been allowed to convert to a full time position. *Id.* at 9. Kuhl received periodic pay raises for her work in urgent care, unlike for her work with the allergy clinic. *Id.* at 8.

In October of 2018, Kuhl received an unsatisfactory Ongoing Professional Practice Environment (OPPE) review for the first time for her work in the allergy clinic, signed by "Person D" and "Person B." *Id.* at 9. The review indicated that Kuhl was not keeping up with her clinic notes (which Kuhl attributes to the fact that she was effectively performing two jobs due to lack of nursing support), and that she was late to work on a day that she called in sick after sleeping through her alarms, among other "fraudulent claims." *Id.* at 9. The review was based in part on purportedly improper communications between Person B and a "stalking former allergy nurse." *Id.* at 9. Someone by the name of Dr. Teuber became Kuhl's supervisor around the same time and played a role in Kuhl's negative review and the subsequent termination of her position. *Id.* at 13. It is not entirely clear if Dr. Teuber is Person B or Person D.

Person B signed a proposed reprimand based on the nurse's allegations, which took days of Kuhl's time to respond, preventing her from catching up on her notes. *Id.* at 9. The reprimand was ultimately dropped except for one unspecified issue that had resulted from fatigue due to Kuhl working multiple jobs. *Id.* at 9. Kuhl alleges that Person B also made "fraudulent allegations" more recently in response to the EEOC's investigation of Kuhl's claims. *Id.* at 9–10.

Kuhl was a member of the medical staff for urgent care, not for the allergy clinic, and she was able to keep up with her notes for urgent care. *Id.* at 10. Two other physicians were fired for

4

1    incomplete or unsigned notes, but "only after major efforts to notify and help them." *Id.* at 10.  A

2    "Dr. RL" often had more unsigned notes than Kuhl.  *Id.* at 10.  (It is not clear if Dr. RL retained

3    their job or was one of the doctors who were fired.)  Dr. JS, who is male, was consistently late to

4    work but not reprimanded or fired.  *Id.* at 10.  Dr. JS is one of the only individuals identified in the

5    Complaint as falling outside of any protected class to which Kuhl belongs.

6          During an interview at an unspecified time, Kuhl "was promised nursing assistance if there

7    was a nurse for [the] allergy clinic at Broadway clinic, but [she] did not get a nurse until years

8    after male ID and hepatitis physicians." *Id.* at 5.  The nature and relevance of the "Broadway

9    clinic" is not clear from the Complaint.  Kuhl was also told at some point that she would be

10   allowed research time "when [she] had a grant funded," but after she successfully obtained

11   funding on a grant from the National Institutes of Health (NIH), she was told that she needed a

12   grant from the VA.  *Id.* at 5.

13         Kuhl's Complaint does not specifically address when her employment at the allergy clinic

14   or the urgent care clinic ended, but the EEOC decision attached to her Complaint indicates that she

15   was notified by email on November 27, 2018 "that her fee based appointment would expire on

16   December 31, 2018," and that she worked at the allergy clinic until 2019 and at the urgent care

17   clinic until 2020.  *Id.* at 17.

18         Kuhl filed two charges with the Equal Employment Opportunity Commission (EEOC) or

19   with an Equal Employment Opportunity (EEO) counselor prior to 2008.  *Id.* at 5.  She alleges that

20   she most recently filed a charge on February 18, 2019.  *Id.* at 5.  An administrative complaint

21   attached to her Complaint is dated June 26, 2019, *id.* at 13, and the EEOC decision attached to her

22   Complaint recites that later date, *id.* at 17, but the administrative complaint indicates that Kuhl

23   first contacted the Office of Resolution Management on February 18, 2019, *id.* at 13.

24         In the proceedings that Kuhl initiated in 2019, the VA accepted and investigated a claim

25   that the VA subjected Kuhl to a hostile work environment based on sex, age, and retaliation for

26   prior EEO activity by terminating her from service in 2008, failing to increase her pay, informing

27   her that her urgent care position was part time and temporary, rating her unsatisfactory in 2018,

28   and notifying her that her appointment would expire at the end of 2018.  *Id.* at 17.  Affirming an

United States District Court
Northern District of California

United States District Court
Northern District of California

1    administrative judge's grant of summary judgment in favor of the VA, the EEOC determined that

2    Kuhl failed to show that any of the conduct at issue was motivated by discriminatory or retaliatory

3    animus.  *Id.* at 17, 20–21.  The EEOC's decision is date July 27, 2023.  *Id.* at 23.  Kuhl alleges that

4    she received the decision, which included notice of her right to sue, on August 4, 2023.  *Id.* at 5.

5         Kuhl checked boxes in her form Complaint indicating that she asserts discrimination based

6    on failure to hire, termination of employment, failure to promote, unequal terms and conditions of

7    employment, and retaliation.  *Id.* at 4.  In a space to identify "[o]ther acts," she wrote,

8    "Defamation via fraudulent allegations."  *Id.* at 4.  She brings claims under Title VII of the Civil

9    Rights Act of 1964, the Age Discrimination in Employment Act of 1967 (ADEA),[7] the Equal Pay

10   Act, the Lilly Ledbetter Fair Pay Act, the Civil Service Reform Act of 1978, and "California Fair

11   Employment and Housing Law."  *Id.* at 4.

12        Kuhl's request for relief indicates that her claims are based on unequal pay from 1998 to

13   the present, fee-based pay for part time work where she believes she should have received raises

14   and benefits, lack of salary for her research, lack of nursing assistance equivalent to what other

15   physicians received, failure to give her credit for the grant she wrote to NIH, removing her from

16   the allergy and infectious disease clinics, harassment by a nurse, and unreasonable clinic

17   schedules.  ECF No. 1 at 6.

18       **B.**    **The Parties' Arguments**

19        The Secretary moves to dismiss Kuhl's Title VII theories of retaliation and defamation[8]

20   based on Kuhl's failure to exhaust administrative remedies by raising them in her administrative

21   complaint.  ECF No. 12 at 4–5.  The Secretary also moves to dismiss any claims for standalone

22   instances of discrimination (as opposed to an ongoing hostile work environment) because all of

23   the alleged discriminatory conduct discussed in Kuhl's Complaint occurred more than forty-five

24   days before Kuhl initiated contact with an EEO counselor.  *Id.* at 5–6.  Although the Secretary

---

[7] Kuhl was born in 1952, Compl. at 4, meaning that she was over the age of forty at all relevant times.

[8] The Court is not aware of any authority for presenting a defamation claim under the auspices of Title VII, but Kuhl's Complaint lists defamation as among the "discriminatory conduct" on which she bases her claims, and the Secretary has apparently construed that as a component of Kuhl's Title VII claim.

1    acknowledges that "a claim hostile work environment [sic] could potentially encompass [conduct]

2    outside of the 45-day period," he argues that Kuhl's claim is based on "discrete acts" that she was

3    required to present within forty-five days after each occurrence. *Id.* at 6. The Secretary ask the

4    Court to "grant [his] motion and dismiss the Complaint" as a whole, but does not address any of

5    the theories of liability that Kuhl asserted other than Title VII. *Id.* at 6; *see* ECF No. 12-1

6    (Proposed Order) (proposing that the Complaint be "dismissed in its entirety").

7         After Kuhl initially missed the deadline for her opposition brief, she filed a short belated

8    brief raising some arguments and asserting that she lacked sufficient time to prepare. ECF No. 14.

9    The Court granted Kuhl an extension of time, and she filed an addendum to her opposition brief

10   shortly thereafter. ECF No. 16.

11        Kuhl argues that she timely initiated EEO counseling and the agency accepted her claims,

12   which were not "standalone" but instead based on "severe and pervasive discrimination" that Kuhl

13   experienced "repetitively." ECF No. 14 at 3. She contends that she "did not get equal pay for

14   equal work" before she was hired to start a San Francisco allergy clinic in 2014 and began work at

15   the Martinez urgent care clinic in 2016. *Id.* Kuhl argues that retaliation claim was properly raised

16   in EEOC proceedings, because the EEOC specifically accepted a claim for hostile work

17   environment "in reprisal for prior protected EEO activity," as well as for discrimination. *Id.* at 4.

18   She asserts that her "new claim of defamation" is based on false statements made by the VA

19   during EEOC proceedings, as well as by the EEOC in its decision. *Id.*

20        In response to the Secretary's argument that she did not timely initiate the EEO process,

21   Kuhl asserts that her allergy clinic was not canceled until January of 2019, and that she "filed [her]

22   EEOC complaint within 45 days of cancellation of [the] last allergy clinic." *Id.* at 6. Kuhl

23   contends that all of the conduct and instances of alleged discrimination at issue "are related as they

24   are mostly the result of actions by the former chief of medicine, his former administrative assistant

25   who moved to HR, and some nursing staff and administration." *Id.* at 7. Much of Kuhl's briefing

26   either repeats or elaborates on the factual assertions of her Complaint. *See generally* ECF Nos, 14,

27   16. Kuhl asserts "that the retaliation is ongoing in the form of a temporary appointment with

28   unequal benefits." ECF No. 16 at 5. Like the Secretary's Motion, Kuhl's briefs do not address the

United States District Court
Northern District of California

claims she asserted under other laws besides Title VII.[9]

The Secretary's reply brief repeats his contention that Kuhl failed to raise defamation or retaliation theories to the EEOC, without addressing Kuhl's argument that the EEOC accepted and considered a retaliation claim.  ECF No. 17 at 2–3.  The Secretary construes Kuhl's arguments that her claims are "related" as indicating that she only intends to assert a hostile work environment claim, not claims for discrete acts of discrimination.  *Id.* at 3.  The Secretary argues that the allegations of Kuhl's Complaint are insufficient to support such a claim, and that she cannot add new factual allegations in her briefs, which in any event only offer conclusory assertions of hostility that would not suffice to state a claim even if they were alleged in her Complaint.  *Id.* at 3–4.  The Secretary's reply does not address any legal theories other than Title VII.

## III.   ANALYSIS

### A.   Legal Standard

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation and internal quotation marks omitted).  A complaint generally must include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A court reviewing a 12(b)(6) motion must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).  "Threadbare recitals of the elements of a cause of action . . . do not suffice," however, and a court need not credit "legal conclusions" or "mere conclusory statements."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  The allegations in the complaint "must be enough to raise a right to relief above the

---

[9] Kuhl also asserts that the Secretary's attorney of record is ineligible to practice in this Court because he is not admitted to the California Bar.  ECF No. 14 at 2–3.  The Court summarily rejects that argument.  Under Civil Local Rule 11-2, "[a]n attorney employed or retained by the United States government or any of its agencies may, without satisfying the membership requirements of LR 11-1, practice in this Court in all actions or proceedings within the scope of his or her employment or retention by the United States."  Defense counsel's representation of the Secretary here falls within the scope of that rule.

United States District Court
Northern District of California

speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must demonstrate "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  When the complaint has been filed by a pro se plaintiff, a court must "construe the pleadings liberally and . . . afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted).

A court's review under Rule 12(b)(6) is generally limited to the contents of a complaint, with the exception of materials incorporated by reference in a complaint or materials subject to judicial notice.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

A court generally should not dismiss a complaint with prejudice under Rule 12(b)(6) unless it is clear the complaint cannot be saved by any amendment.  *See United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).  "[L]eave to amend should be freely granted 'when justice so requires.'"  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting Fed. R. Civ. P. 15(a)).  Generally, leave to amend may be denied only if allowing the amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### B.    Title VII and ADEA Claims

Title VII provides that it is unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Title VII also prohibits retaliation for opposing discrimination or for participating in Title VII proceedings.  *Id.* § 2000e-3(a).

A federal employee must exhaust administrative remedies before bringing a Title VII claim in federal court, as follows:

> Before a federal employee may bring a Title VII claim for discrimination or retaliation, the employee must first seek administrative relief within the agency responsible for the alleged discrimination. [*Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976).] To do so, the employee must engage in "pre-complaint processing" by contacting an EEO counselor within 45 days of the alleged discrimination. 29 C.F.R. § 1614.105(a)(1). The agency then

1

2

3

> investigates, and the claimant may later file a formal EEO complaint.
> *Id.* §§ 1614.105(c), (d). If the matter is not resolved after the agency
> issues its final decision, the employee may either: (1) file directly in
> federal court within 90 days, *id.* § 1614.407(a), or (2) appeal through
> the EEOC within 30 days, *id.* §§ 1614.401(a), 1614.402(a).

4

*Williams v. Wolf*, No. 19-cv-00652-JCS, 2019 WL 6311381, at *5 (N.D. Cal. Nov. 25, 2019).

5    The ADEA prohibits age discrimination against employees over the age of forty, as well as

6  retaliation for protected activity.  It is subject to essentially the same administrative exhaustion

7  requirement for federal employees as Title VII, unless an employee follows a separate track of

8  giving notice to the EEOC of discrimination and intent to sue, which Kuhl has not alleged that she

9  pursued here.  *Whitman v. Mineta*, 541 F.3d 929, 932 (9th Cir. 2008).

### 1.    Claims Purportedly Not Raised in EEOC Complaint

11    The Secretary asserts that Kuhl did not exhaust claims based on retaliation or defamation

12  because she failed to raise those theories in her administrative complaint.

13    The Secretary's assertion that Kuhl did not assert retaliation in her administrative

14  complaint is simply incorrect.  A heading in Kuhl's extended discussion of the basis for her

15  administrative claims reads: "Basis: *retaliation*, violation of Lily Ledbetter fair pay act."  Compl.

16  at 14 (emphasis added).  Kuhl went on to state that she believed certain conduct "was in part

17  retaliation for filing EEO for gender discrimination a few years earlier."  *Id.*  In its decision on

18  Kuhl's administrative appeal, the EEOC acknowledged that the administrative complaint asserted

19  "reprisal for prior protected EEO activity," and noted that the VA had accepted a reprisal claim for

20  investigation.  *Id.* at 17.  The Court therefore declines to dismiss Kuhl's retaliation claim for

21  failure to raise it in administrative proceedings.

22    Kuhl's defamation theory is a different story.  Kuhl argues that she should be able to

23  pursue a Title VII claim based on the VA and the EEOC making false statements about her as part

24  of the administrative process.  ECF No. 14 at 4.  Kuhl's administrative complaint did not,

25  however, assert a theory of discrimination or retaliation through defamation, Compl. at 13–14, and

26  nothing in the EEOC's decision suggests that it discerned that Kuhl intended to pursue such a

27  theory in the course of administrative proceedings, *id.* at 16–23.

28    Under the doctrine of substantial compliance, courts allow plaintiffs to pursue claims that

1    are sufficiently similar to those asserted in administrative proceedings even if they are not

2    identical. "[T]he allegations of a plaintiff's judicial complaint must be 'like or reasonably

3    related to the allegations' in an administrative complaint submitted to the EEO, such that they

4    would fall within 'the scope of an EEOC investigation which [could] reasonably be expected to

5    grow out of the [administrative] charge of discrimination.'" *Williams*, 2019 WL 6311381, at *6

6    (quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990)) (alterations in original).

7          Under at least some circumstances, conduct occurring after an administrative complaint

8    was submitted can be considered sufficiently related to the complaint to satisfy exhaustion and

9    allow a plaintiff to raise that conduct in subsequent court proceedings. *Id.* at *8 (citing, *e.g.*,

10    *Brown v. Puget Sound Elec. Apprenticeship & Training Tr.*, 732 F.2d 726, 729–30 (9th Cir.

11    1984)). Here, though, Kuhl's theory of discrimination or retaliation through defamation does not

12    appear to be related to the allegations she presented to the VA and the EEOC. There is no

13    indication that Kuhl raised allegations of anyone making false statements about her as part of her

14    administrative complaint, such that investigation of such statements—whether made before or

15    during the administrative proceedings—could "reasonably be expected to grow out of the charge

16    of discrimination." *See Sosa*, 920 F.2d at 1456. Even if other employees' statements of fact

17    differed from Kuhl's, Kuhl has not alleged that she did anything to put the EEOC on notice that

18    she believed purportedly false statements by those employees were in themselves an act of

19    discrimination or retaliation. In her opposition brief, Kuhl asks whether she was "supposed to file

20    further EEO complaints to protest the fraud presented by the agency in discovery and now

21    repeated as 'fact' by the EEOC." ECF No. 14 at 4. If she believed that such statements were

22    themselves an act of discrimination or retaliation, then the answer is yes, she needed to present

23    that theory to the EEOC so that it could investigate and consider that issue in the first instance.

24    Because Kuhl has not exhausted administrative remedies as to her theory that the VA

25    discriminated or retaliated against her by making defamatory statements during administrative

26    proceedings, the Secretary's Motion to Dismiss is GRANTED as to that theory.[10] In an abundance

27

28    [10] The Court does not reach the question of whether false statements during an EEOC proceeding can be considered discriminatory or retaliatory conduct supporting a Title VII claim. Neither

11

1    of caution, the Court grants Kuhl leave to amend if she believes that she can allege additional facts

2    to show sufficient administrative exhaustion of her defamation theory.

3          The Court notes that Kuhl's theory of defamation as a violation of Title VII is unusual.

4    Defamation is typically a separate claim asserted under state law, but it does not appear that Kuhl

5    can assert a state law defamation claim against the Secretary or any other federal employee.

6    Unless a claim is based on violation of a federal statute or the U.S. Constitution, the Federal Tort

7    Claims Act (FTCA) provides the exclusive mechanism for a tort claim based on conduct by a

8    federal employee in the course of their official duties.  *See* 28 U.S.C. § 2679(b)(1).  The FTCA

9    specifically excludes "libel" and "slander" (the two historical types of defamation claim) from its

10   scope.  28 U.S.C. § 2680(h).  That said, it is not clear that Kuhl intended to assert a state law

11   defamation claim, and the Secretary raised no arguments regarding such a claim.  The Court does

12   not construe Kuhl's present Complaint as asserting defamation as a distinct claim under state law

13   or any other authority besides Title VII.  In the absence of such a claim or any argument

14   addressing its viability, the Court does not reach a conclusion as to whether it might be possible

15   for Kuhl to allege some form of that claim in an amended complaint.

16                    **2.      Timely EEO Contact Regarding Adverse Employment Actions**

17         As discussed above, Title VII and the ADEA both require a federal employee claimant to

18   pursue contact with an EEO counselor within forty-five days after an alleged instance of

19   discrimination (unless an ADEA plaintiff pursues an alternative process that Kuhl has not alleged

20   here).  29 C.F.R. § 1614.105(a)(1); *Whitman*, 541 F.3d at 932.

21         The Secretary moves to dismiss Kuhl's discrimination claims because all of the alleged

22   conduct on which she bases those claims occurred more than forty-five days before she contacted

23   an EEO counselor in February of 2019.  Mot. at 5–6.  Although the Secretary does not specifically

24   address the ADEA, this portion of his Motion is not explicitly limited to Title VII, and the Court

25   construes it as addressing Kuhl's ADEA claim as well because substantially the same standard of

26   administrative exhaustion applies.

27

28   ─────────────────────────
     party has cited authority addressing a similar claim.

1    Other than initial contact "prior to 2008," for which the time to pursue a civil action has

2    long since expired, Kuhl alleges that she first contacted an EEO counselor on February 18, 2019.

3    Compl. at 5.  Under the applicable regulation, that contact would be timely only for adverse action

4    that occurred no earlier than January 4, 2019, forty-five days before Kuhl contacted the counselor.

5    29 C.F.R. § 1614.105(a)(1).

6    Kuhl's Complaint does not allege that any particular conduct occurred between January 4,

7    2019 and February 18, 2019.  *See* Compl. at 5, 8–11.  Instead, most of the conduct on which Kuhl

8    relies occurred years earlier, and the latest incident discussed in her Complaint is a memorandum

9    she received three days after her October 2018 adverse evaluation, stating that her "fee basis

10   appointment would expire December 31."  *Id.* at 9–10.  If that is the last incident on which Kuhl

11   bases her discrimination and retaliation claims, then her February 18, 2019 contact with a

12   counselor was too late, and the claims must be dismissed.

13   Kuhl's briefs indicate that the allergy clinic closed later, at some point in 2019.  ECF No.

14   14 at 6.  When considering a motion to dismiss under Rule 12(b)(6), "a court *may not* look beyond

15   the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a

16   defendant's motion to dismiss."  *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th

17   Cir. 1998).  Perhaps Kuhl could file an amended complaint alleging relevant adverse action falling

18   within the forty-five day period before she contacted a counselor, but the Court's review on this

19   motion is confined to her present Complaint, which includes no such action in that period of time.

20   The Secretary's Motion is therefore GRANTED as to Kuhl's Title VII and ADEA claims to the

21   extent they are based on specific incidents of discrimination.  Such claims are DISMISSED with

22   leave to amend.

23   The same forty-five day deadline also applies to claims for wage discrimination under the

24   Equal Pay Act.  *See* 29 C.F.R. § 1614.103(a) (defining the scope of discrimination claims subject

25   to 29 C.F.R. § 1614.105(a)(1), which in turn requires contacting an EEO counselor within forty-

26   five days).  Because the Equal Pay Act is narrowly focused on wage discrimination, though,

27   Kuhl's claim under that statute does not appear to be based on the same purportedly

28   discriminatory acts that Kuhl's Complaint and the Secretary's Motion address in the context of her

United States District Court
Northern District of California

1   Title VII and ADEA claims.  The Secretary has not discussed wage theft or the Equal Pay Act

2   claim in any way in his motion—neither to discuss when such a claim accrues, nor to argue that it

3   was untimely.  The Court therefore declines to dismiss the Equal Pay Act claim on the basis of

4   untimely contact with an EEO counselor.

### 3.  Hostile Work Environment

6   Kuhl argues that her claims should be allowed to proceed despite the forty-five-day

7   deadline because they are based on an ongoing and related course of conduct.  That argument

8   suggests a claim based on a hostile work environment, which is how the VA and the EEOC

9   construed her administrative claim.  Both Title VII and the ADEA allow for claims based on

10   pervasively hostile work environment as opposed to specific adverse employment actions.  A

11   plaintiff may bring such a claim "[w]hen the workplace is permeated with discriminatory

12   intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of

13   the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys.,*

14   *Inc.*, 510 U.S. 17, 21 (1993).

15   The ongoing nature of a hostile work environment claim raises the question of when

16   administrative proceedings must be initiated, and what past conduct can be offered to support the

17   claim.  The Supreme Court has held that although a timely claim based on one discrete act of

18   discrimination does not allow a plaintiff to pursue claims based on related past act, a hostile work

19   environment claim addresses continuous conditions of employment, and can include conduct

20   predating the limitations period.  *See generally Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S.

21   101, 105 (2002).  The hostile work environment claim cannot, however, incorporate past discrete

22   acts of discrimination that could have been presented on their own but were not raised until after

23   the deadline to do so.  *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 892–93 (9th Cir. 2005).

24   "When a plaintiff raises a hostile work environment claim that includes acts outside the

25   limitations period, the court must: (a) sort the alleged discrimination into discrete acts and

26   discriminatory behavior; and (b) disregard alleged untimely discrete acts."  *Quintana v. Clark*

27   *Cnty. Sch. Dist.*, No. 2:21-cv-00023-GMN-NJK, 2021 WL 4226998, at *4 (D. Nev. Sept. 16,

28   2021).  For the purpose of this rule, it does not matter whether earlier acts bear some relation to

United States District Court
Northern District of California

14

1   later ones, such as Kuhl's assertion that the same group of people was largely responsible for her

2   alleged mistreatment.  ECF No. 14 at 7.  "A plaintiff may not bootstrap untimely discrete acts of

3   discrimination to a hostile work environment claim merely because there is some nexus between

4   the acts alleged."  *Quintana*, 2021 WL 4226998, at *4.

5   The use of the terms "discrete" in some caselaw to describe the category of acts that fall

6   outside of a hostile work environment claim can be misleading.  At least based on an ordinary

7   meaning of the word "discrete,"—i.e., distinct or separate[11]—a hostile work environment claim

8   can be based on certain types of discrete actions or incidents.  For example, Ninth Circuit

9   decisions have approved of hostile work environment claims based on a series of unwanted

10  romantic and sexual letters from a coworker, *Ellison v. Brady*, 924 F.2d 872, 880 (9th Cir. 1991),

11  a coworker's "use of four racial slurs made in [the plaintiff's] presence," *Mack v. Town of Pinetop*

12  *Lakeside*, 780 F. App'x 448, 451 (9th Cir. 2019), or potentially "a sexual assault by a supervisor,

13  even on a single occasion," *Brooks v. City of San Mateo*, 229 F.3d 917, 927 n.9 (9th Cir. 2000).

14  The salient question is whether a claim is based on "discrete acts *of discrimination or*

15  *retaliation*."  *See Morgan*, 536 U.S. at 105 (emphasis added).  In other words, courts look to

16  whether the acts in question were the sort of adverse employment actions that could in themselves

17  give rise to a claim for discrimination or retaliation, outside of the framework of a hostile work

18  environment claim.  Some cases nevertheless use the word "discrete" alone as a shorthand for

19  discrete instances of discrimination or retaliation.  For example, the Ninth Circuit's decision in

20  *Porter v. California Department of Corrections* distinguishes "discrete" acts like "refusing to

21  grant Porter's requests for vacation or holidays" from "non-discrete acts" like certain offensive

22  comments by coworkers and an instance where a coworker "ate and then spat in Porter's food"—

23  even though the latter might also be considered "discrete acts" under an ordinary meaning of those

24  words.  *See* 419 F.3d 885, 893 (9th Cir. 2005).  If a particular incident is actionable in itself as

25  employment discrimination, the appropriate remedy is a timely claim for discrimination, not a

26  later claim that the discriminatory act contributed to a hostile work environment.

27

28  [11] Merriam-Webster Dictionary, "discrete," *available at* https://www.merriam-
    webster.com/dictionary/discrete ("constituting a separate entity : individually distinct").

United States District Court
Northern District of California

United States District Court
Northern District of California

Here, Kuhl bases her claim largely on conduct that is best considered discrete acts of alleged discrimination, such as negative performance reviews and decisions regarding compensation and staffing.  *See, e.g.*, *Quintana*, 2021 WL 4226998, at *4 ("Each of the following events are alleged discriminatory decisions Defendants took against Plaintiff that had immediate consequences that characterize discrete act claims: denying Plaintiff equipment; denying Plaintiff timely access to her classroom; denying Plaintiff training; denying Plaintiff commendation on her achievements, etc.").  Kuhl does not allege, for example, that she was subject to pervasive misogynistic or ageist comments, that coworkers physically mistreated her, or that she was ostracized by her colleagues on account of her age, gender, or protected activity.  Kuhl's allegations of bullying by a nurse could perhaps fit into a hostile work environment claim, but there is no indication in the Complaint that such bullying was motivated by Kuhl's gender, age, or protected activity, nor that such conduct continued into the forty-five-day limitations period before Kuhl initiated EEO contact.  *See* Compl. at 14.

Accordingly, setting aside discretely actionable employment actions that Kuhl failed to raise through the administrative process on a timely basis, Kuhl has not alleged the sort of pervasive discriminatory or retaliatory harassment necessary to support a hostile work environment claim.  Given that she is limited in this action to claims for which she timely exhausted administrative remedies, it may be difficult for Kuhl to amend her Complaint now to state a viable Title VII or ADEA claim based on a hostile work environment theory.  In an abundance of caution, however, the Court grants Kuhl leave to amend this claim.

### C.    Other Claims

Although neither party discusses them in their briefs, Kuhl's Complaint invokes several laws besides Title VII and the ADEA.  The form complaint that Kuhl used includes a section that begins, "This action is brought for discrimination in employment pursuant to *(check all that apply)*:".  Compl. at 3.  Kuhl checked boxes not only for Title VII and the ADEA, but also for "Other federal law" and "Relevant state law."  *Id.*  In the box to identify other federal law, Kuhl wrote: "Equal Pay Act and Lily Ledbetter Fair Pay Act, Civil Service Reform Act of 1978."  *Id.*

1    In the box to identify state law, Kuhl wrote: "California Fair Employment and Housing Law."[12]

2    *Id.*

3           The Secretary's briefs do not address any of those statutes.  Rule 12(b)(6) places the

4    burden of persuasion on the moving party, meaning that the party who files a motion to dismiss

5    must explain why dismissal is warranted.  *Cohen v. Bd. of Trustees of the Univ. of D.C.*, 819 F.3d

6    476, 481 (D.C. Cir. 2016) (citing a treatise acknowledging consensus among the federal courts).

7    Since the Secretary has offered no reason to dismiss Kuhl's claims under any law besides Title VII

8    or the ADEA, his motion is DENIED as to Kuhl's other claims, which may proceed.

9           This is not to say that Kuhl's other claims are necessarily viable or sufficiently alleged.

10   The Court does not reach that question because the Secretary failed to raise it.  For at least some of

11   those claims, however, the Court has concerns about whether Kuhl can bring a claim against the

12   Secretary under the statutes she has invoked, or whether she has included sufficient factual

13   allegations to support those claims.  Similarly, although the Court does not reach potential issues

14   with Kuhl's Title VII and ADEA claims beyond those raised by Secretary and discussed above, it

15   is not clear that Kuhl has offered sufficient allegations as to other elements of those two claims,

16   such as whether any adverse action was motived by discrimination or retaliation.  If Kuhl files an

17   amended complaint in response to this Order, she is encouraged to consider the sufficiency of *all*

18   of the claims she intends to pursue, not only the Title VII and ADEA claims that Court now

19   dismisses with leave to amend.

20   **IV.    CONCLUSION**

21          For the reasons discussed above, the Secretary's Motion is GRANTED as to Kuhl's claims

22   under Title VII and the ADEA, which are DISMISSED with leave to amend.  The Secretary's

23   Motion is DENIED as to all other claims.

24           Kuhl may file an amended complaint no later than August 14, 2024.  An amended

25   complaint completely replaces the original complaint, and must include all claims and allegations

26   that Kuhl intends to pursue.  If Kuhl does not file an amended complaint by that deadline, the

27   _____

28   [12] This is presumably a reference to California's Fair Employment and Housing Act, commonly known as FEHA.

Secretary must file an answer to the present Complaint no later than August 21, 2024.

If Kuhl continues to pursue this case without an attorney, she is encouraged to contact the Court's Legal Help Centers for assistance.  Attorneys at the Legal Help Centers cannot represent parties in litigation but can provide basic assistance to parties representing themselves.  Kuhl may schedule an appointment by calling 415-782-8982 or emailing fedpro@sfbar.org.

**IT IS SO ORDERED.**

Dated: July 17, 2024

_____
LISA J. CISNEROS
United States Magistrate Judge