UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH J. KUHL,<br><br>          Plaintiff,<br><br>     v.<br><br>DOUGLAS COLLINS,<br><br>          Defendant. | Case No. 23-cv-05604-LJC<br><br>**ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Re: Dkt. No. 40 |

## I.     INTRODUCTION

Plaintiff Sarah Kuhl, a physician proceeding pro se, brings this action regarding her employment at the Department of Veterans Affairs against Defendant Douglas Collins, the Secretary of Veterans Affairs (the Secretary).[1]  The Secretary previously moved to dismiss Kuhl's original Complaint, and the Court granted that application in part, dismissing with leave to amend Kuhl's claims under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act (ADEA), but declining to dismiss other claims that the Secretary failed to address.

Kuhl has now filed an Amended Complaint, and the Secretary again moves to dismiss. The Court found the matter suitable for resolution without oral argument and vacated the hearing previously set.  ECF No. 43; *see* Civ. L.R. 7-1(b).  For the reasons discussed below, the Secretary's Motion is GRANTED, and Kuhl's Amended Complaint is DISMISSED.  Kuhl may file a second amended complaint no later than May 8, 2025.  The case management conference

---

[1] Collins replaced Denis McDonough as Secretary during the pendency of this action, and is therefore automatically substituted as Defendant pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

previously set for April 24, 2025 is CONTINUED to July 17, 2025.[2]

## II.  BACKGROUND

### A.  Procedural History and Previous Order

Kuhl checked boxes in her original form Complaint indicating that she asserted discrimination on account of age and gender based on failure to hire, termination of employment, failure to promote, unequal terms and conditions of employment, and retaliation. Compl. (ECF No. 1) at 4. In a space to identify "[o]ther acts," she wrote, "Defamation via fraudulent allegations." *Id.* She also asserted claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967 (ADEA), the Equal Pay Act, the Lilly Ledbetter Fair Pay Act, the Civil Service Reform Act of 1978, and "California Fair Employment and Housing Law." *Id.*

The Secretary moved to dismiss, and the Court dismissed Kuhl's original complaint in part. *See generally* ECF No. 29 (Order re Mot. to Dismiss).[3] To the extent that Kuhl asserted defamation as a form of discrimination or retaliation in violation of Title VII, the Court dismissed such claims for failure to exhaust administrative remedies because Kuhl did not allege that she raised any issue of defamation to an EEO counselor or the EEOC, without reaching the question of whether defamation can ever support a claim for discrimination or retaliation. *Id.* at 10–12 & n.10. The Court dismissed Kuhl's remaining discrimination claims for failure to allege that she contacted an EEO counselor within forty-five days of an adverse employment action, as required by both Title VII and (under the procedure that Kuhl has pursued) the ADEA. *Id.* at 12–14. The Court dismissed Kuhl's hostile work environment claims for failure to allege pervasive harassment distinct from the sort of "discrete" adverse employment actions that give rise to a discrimination or retaliation claim. *Id.* at 14–16. The combined effects of those holdings was to dismiss Kuhl's Title VII and ADEA claims in their entirety, but the Court granted Kuhl leave to

---

[2] The parties have consented to the jurisdiction of a magistrate judge for all purposes under 28 U.S.C. § 636(c).
[3] *Kuhl v. McDonough*, No. 23-cv-05604-LJC, 2024 WL 3463350 (N.D. Cal. July 17, 2024). Citations herein to the Court's previous Order, as well as to other documents filed in the record, refer to page numbers as assigned by the Court's ECF filing system unless otherwise indicated.

2

amend. *Id.* at 17.

The Court declined to dismiss Kuhl's other claims—including claims under the Equal Pay Act, the Lily Ledbetter Fair Pay Act, the Civil Service Reform Act of 1978, and California law—because the Secretary failed to address them in his Motion. *Id.* at 13–14, 16–17. The Court nevertheless noted "concerns about whether Kuhl can bring a claim against the Secretary under the statutes she has invoked, or whether she has included sufficient factual allegations to support those claims," and encouraged Kuhl in any amended complaint "to consider the sufficiency of all of the claims she intends to pursue, not only the Title VII and ADEA claims." *Id.* at 17. The Court instructed Kuhl that an "amended complaint completely replaces the original complaint, and must include all claims and allegations that Kuhl intends to pursue." *Id.*

The Court's Order dismissing in part Kuhl's original Complaint set a deadline of August 14, 2024 for Kuhl to file an amended complaint. ECF No. 29 at 1, 17. In the early morning of August 15, 2024, Kuhl filed an administrative motion to extend the deadline for initial disclosures, apparently having intended to seek an extension for filing an amended complaint. ECF No. 30. The Court subsequently granted a Stipulation to extend the deadline for the amended complaint to September 4, 2024. ECF No. 33. In the early morning of September 5, 2024, Kuhl filed a version of her Amended Complaint, lacking page numbers and with some pages out of order. ECF No. 35. Later that day, Kuhl filed a new version of her Amended Complaint, with a note added to the first page that "[t]his is the same submission with the addition of page numbers, and pages now in correct order." ECF No. 36 (Am. Compl.[4]) at 1. That assertion is false: the second filing includes three additional pages—two pages of the Amended Complaint itself, and one page of an exhibit—that were not filed with the first version, *id.* at 6, 7, 14, as well as new hand-written edits to the text of the document, *id.* at 2, 4. The Court nevertheless excuses Kuhl's late filing and mischaracterization, and considers the second version of the Amended Complaint for the purpose of the present Motion.

---

[4] Subsequent references in this Order to the Amended Complaint refer to this second version of that document. All citations herein to documents filed in the record refer to page numbers as assigned by the Court's ECF filing system unless otherwise indicated.

### B. Allegations of the Amended Complaint

Because a plaintiff's factual allegations are generally taken as true in resolving a motion to dismiss under Rule 12(b)(6), this Order summarizes Kuhl's allegations as if true. Nothing in this Order should be construed as resolving any issue of fact that might be disputed at a later stage of the case.

Kuhl's Amended Complaint consists of a seven-page narrative followed by several attachments. *See generally* Am. Compl. Portions of it appear to respond directly to the Court's previous Order or the Secretary's previous Motion to Dismiss. *See, e.g.*, Am. Compl. at 2 ("Regarding the allegation that report [sic] was not timely . . . ."). Portions of it recount the factual grounds for claims that the EEOC accepted for administrative consideration, without identifying any statutory or legal basis for any claim, or asserting that Kuhl is pursuing the same claims here. *Id.* at 4–8. The Amended Complaint does not itself assert any claim for relief.

Nearly all of Kuhl's Amended Complaint relates to incidents occurring years before she filed this action. For example, in 1998, Kuhl "was invited to apply for a part-time position as [a] specialist in infectious disease and allergy-immunology" at the VA's Mather Hospital in Sacramento. Am. Compl. at 2. The position had been listed as permanent, but that description was "crossed out and changed to temporary." *Id.* Kuhl was told by a Dr. Siegel that she "could not get research time without a grant," even though other doctors were afforded research time. *Id.* She applied for a grant from the National Institutes of Health (NIH) to study effects of magnesium, but then was told she needed a grant from the VA. *Id.* When she apparently nevertheless worked on the NIH grant, she refused to approve a procedure by a "non-clinical person" due to patient safety concerns. *Id.* The funds she was supposed to receive for writing the grant went to someone else, and Kuhl's contribution was not acknowledged. *Id.*

As additional examples, Kuhl asserts that she was wrongfully terminated from a VA position in 2008, *id.*, that she was given inadequate hours in 1999, *id.* at 3, that she was classified as a temporary employee in 2006, *id.*, and that she received inadequate nursing support in the years leading up to 2016, *id.*

As discussed in the Court's previous Order, if Kuhl wishes pursue claims under Title VII

4

and the ADEA, she generally would have needed to make contact with an EEO counselor within forty-five days of the events giving rise to her claims. ECF No. 29 at 9–10, 12. This Order therefore does not address in detail allegations regarding events preceding January 6, 2019—forty-five days before Kuhl initiated contact with an EEO counselor on February 20, 2019. *See* Am. Compl. at 2, 9–10.[5]

The primary incident that Kuhl alleges occurred *around* the time of that deadline was the termination of her work for a VA allergy clinic.[6] On November 7, 2018, the Chief of Allergy (Dr. Teuber) emailed Kuhl regarding an improvement plan to complete open encounters. Am. Compl. at 2. On November 23, 2018 (the day after Thanksgiving), Kuhl received an unsatisfactory evaluation for her work at the allergy clinic. *Id.* at 6. Three days later,[7] she received an "email terminating [her] position." *Id.* Kuhl asserts that the grounds for that unsatisfactory review and termination were inaccurate or unreasonable. *Id.* at 6–7. In Kuhl's own words, the November termination notice "stat[ed] that [Kuhl's] fee basis appointment would expire December 31." *Id.* at 7; *see also id.* at 16–17 (email and memorandum informing Kuhl of non-renewal).

But Kuhl also alleges that she was "told by email that [she] would no longer be working in allergy clinic on January 8," 2019, and that her "clinics had not been canceled until that" date. Am. Compl. at 2. She cites the November 7, 2018 email regarding a performance improvement plan as having "led [her] to believe that [she] could continue to work in [the] allergy clinic." *Id.*

---

[5] Kuhl previously alleged in her original Complaint that she made contact with an EEO counselor on February 18, 2019. Compl. (ECF No. 1) at 5. Kuhl now alleges, and attaches documentation supporting, that her first contact in 2019 occurred on February 20th. Am. Compl. at 2, 9–10. The discrepancy is not material to the outcome of the present Motion.

[6] Kuhl has continued working for the VA in other capacities, and takes issue with the VA's ongoing treatment of her, but it appears that the only issue she raised with an EEO counselor in 2019 was the termination of her work at the allergy clinic. *See* Am. Compl. at 10 (EEO counselor's report); *see also id.* at 11 ("The Aggrieved was informed that the claims listed above were the only claims addressed during the informal EEO counseling. If a formal Complaint of Discrimination is filed, a claim that has not been brought to the attention of an EEO counselor and is not like or related to [such a claim] is subject to dismissal in accordance to CFR 1614.107 (2).").

[7] Kuhl alleges she received this notice three days after the unsatisfactory evaluation, which would be November 26, 2018. Am. Compl. at 6. She attaches an email dated November 27, 2018 informing her of the nonrenewal, which in turn attached a memorandum to that effect dated November 15, 2018. Am. Compl. at 16–17.

### C. The Parties' Arguments

The Secretary contends that Kuhl cannot pursue Title VII and ADEA claims based on conduct occurring after she filed her 2019 EEOC complaint, including alleged defamatory statements, because Kuhl has not cured her previous failure to show that she exhausted administrative remedies as to such claims. ECF No. 40 at 5–6. The Secretary argues that Kuhl's Title VII and ADEA claims also cannot be based on conduct preceding January 6, 2019, because Kuhl failed to exhaust administrative remedies within the time allowed. *Id.* at 6–7. The Secretary asserts that the Amended Complaint does not resolve the defects in Kuhl's hostile work environment claim that the Court previously identified. *Id.* at 7–8. Looking beyond Title VII and the ADEA, the Secretary argues that Kuhl's Amended Complaint does not assert claims based on any of the other statutes identified in her original Complaint, and even if it did, they would be subject to dismissal. *Id.* at 8–9. Finally, the Secretary argues that the United States has not waived sovereign immunity for claims under California's Fair Employment and Housing Act, and is therefore not subject to suit under that law. *Id.* at 9–10.

Kuhl's opposition brief apologizes for defects in her original Complaint and Amended Complaint, asserting that she has been ill and overextended. ECF No. 41 at 4–5. She asserts that "obviously one does not file [administrative claims] regarding every allegation." *Id.* at 5. She also notes that because the "EEOC accepted [her] request for counseling as timely," she does not "understand why it is now being questioned." *Id.* Kuhl asserts that her work at the allergy clinic was not canceled after the 2018 termination notice, so she continued to show up for work. *Id.* at 5–6. She contends that fraudulent allegations against her, a difficult ordeal responding to a formal reprimand, and unequal pay support her hostile work environment claim. *Id.* at 6–7. Kuhl also addresses the merits of claims under the Lily Ledbetter Fair Pay Act, the Equal Pay Act, and the Civil Service Reform Act, without responding to the Secretary's argument that those claims do not appear in her Amended Complaint. *Id.* at 7–8.

The Secretary's reply brief (ECF No. 42) generally echoes the arguments in the Secretary's Motion.

### III. ANALYSIS

#### A. Legal Standard

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation and internal quotation marks omitted). A complaint generally must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A court reviewing a 12(b)(6) motion must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007). "Threadbare recitals of the elements of a cause of action . . . do not suffice," however, and a court need not credit "legal conclusions" or "mere conclusory statements." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must demonstrate "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When the complaint has been filed by a pro se plaintiff, a court must "construe the pleadings liberally and . . . afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted).

A court's review under Rule 12(b)(6) is generally limited to the contents of a complaint, with the exception of materials incorporated by reference in a complaint or materials subject to judicial notice. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

A court generally should not dismiss a complaint with prejudice under Rule 12(b)(6) unless it is clear the complaint cannot be saved by any amendment. *See United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). "[L]eave to amend should be freely granted 'when justice so requires.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting Fed. R. Civ. P. 15(a)). Generally, leave to amend may be denied only if allowing the amendment would unduly prejudice the defendant, cause undue delay, or be futile, or if the plaintiff has acted

7

in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### B. Failure to Assert Claims

The Secretary argues that Kuhl has not pursued in her Amended Complaint several of the claims identified in her original Complaint, including under the Equal Pay Act, the Lily Ledbetter Fair Pay Act, the Civil Service Reform Act of 1978, and the California Fair Employment and Housing Act (FEHA). *See* ECF No. 40 at 8, 9. Kuhl includes arguments in her opposition brief as to the merits of those claims (except for FEHA, which she mentions only in a heading), ECF No. 41 at 7–8, but does not address the fact that her Amended Complaint fails to reference any of those statutes.

Moreover, although the Secretary appears to construe Kuhl's Amended Complaint as pursuing the Title VII and ADEA claims that the Court previously dismissed with leave to amend, the Amended Complaint does not actually mention those claims, either. Nor does it include basic factual allegations to suggest that Kuhl intended to pursue the discrimination claims she asserted under those statutes in her original Complaint, such as allegations regarding Kuhl's age, the sex or age of anyone else who Kuhl believes was treated better than she was, or assertions that Kuhl faced discrimination. "Federal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014), but they require "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to put the defendant—and the Court—on notice of the claims asserted.

One might guess at some of the claims at issue based on Kuhl's previous Complaint, but the Ninth Circuit has disapproved of that approach in the analogous circumstances of a plaintiff who failed to name each of the defendants in an amended complaint, instead listing one defendant's name followed by the words "et al." (meaning "and others"). The Ninth Circuit affirmed dismissal after the plaintiff failed to comply with an order to correct that deficiency, even though previous versions of the complaint listed other defendants by name:

> [O]ther than amendment by [Plaintiff] Ferdik, in this case there is no other way of ascertaining the identities of the intended defendants. The only possible means, reference to Ferdik's original and first

> amended complaints which contained captions that listed other defendants in addition to Bonzelet, is precluded by the well-established doctrine that an amended pleading supersedes the original pleading. [Citations.] Because after amendment the original pleading no longer performs any function and is treated thereafter as non-existent," [citation], Ferdik's earlier complaints cannot have the effect of filling in the names of the defendants in the later "et al." pleading.

*Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).

This Court therefore previously instructed Kuhl that an "amended complaint completely replaces the original complaint, and must include all claims and allegations that Kuhl intends to pursue." ECF No. 29 at 17. Unable to rely on Kuhl's previous Complaint to determine the claims at issue, the Court is left with an Amended Complaint that asserts no claims at all.

This issue is compounded by the freeform narrative structure of Kuhl's Amended Complaint. Under Rule 10 of the Federal Rules of Civil Procedure, a "party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). A typical civil complaint is structured as a series of short consecutively-numbered paragraphs, and—in its most basic form—generally begins by laying out the factual allegations on which the plaintiff relies, before then identifying each legal claim the plaintiff intends to pursue. Although that sequence is a matter of convention, the use of discrete numbered paragraphs is required by Rule 10(b). Breaking the complaint down into numbered paragraphs also serves a practical purpose: if this case progresses to the Secretary filing an answer, the Secretary will be required to admit or deny each of Kuhl's factual allegations. *See* Fed. R. Civ. P. 8(b). It would be extremely difficult for the Secretary to draft an answer that complies with Rule 8 in response to the seven-page narrative of Kuhl's Amended Complaint. Following the conventional structure (factual allegations, followed by legal claims) will also help Kuhl to avoid the error of omitting legal claims altogether, as in her current Amended Complaint.

"A trial court may dismiss a claim sua sponte under [Rule] 12(b)(6)." *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987). Although the Court hesitates to exercise that authority when the burden of persuasion is generally on the party moving to dismiss, *see* ECF No. 29 at 17, Kuhl's basic failure to identify the claims she seeks to pursue leaves the Court unable to determine that her Amended Complaint states any viable claim. Accordingly, Kuhl's Complaint is

9

1  DISMISSED in its entirety on that basis, notwithstanding the Secretary's failure to raise that issue
2  with respect to Kuhl's purported claims under the ADEA and Title VII.
3        Based on Kuhl's apparently extreme misunderstanding of the purpose and function of an
4  amended complaint, the Court cannot say with confidence that further leave to amend would be
5  futile, and declines at this time to dismiss any claim with prejudice.  To provide guidance for any
6  further amended complaint, the Court briefly addresses some of the other arguments the parties
7  have made regarding the Title VII and ADEA claims Kuhl may have intended to raise in her
8  current Amended Complaint.  Another failed attempt to amend to state a viable claim may lead the
9  Court to conclude that further amendment would be futile.

### C. Title VII and ADEA Claims

Title VII provides that it is unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Title VII also prohibits retaliation for opposing discrimination or for participating in Title VII proceedings.  *Id.* § 2000e-3(a).

A federal employee must exhaust administrative remedies before bringing a Title VII claim in federal court, as follows:

> Before a federal employee may bring a Title VII claim for discrimination or retaliation, the employee must first seek administrative relief within the agency responsible for the alleged discrimination. [*Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976).] To do so, the employee must engage in "pre-complaint processing" by contacting an EEO counselor within 45 days of the alleged discrimination. 29 C.F.R. § 1614.105(a)(1). The agency then investigates, and the claimant may later file a formal EEO complaint. *Id.* §§ 1614.105(c), (d). If the matter is not resolved after the agency issues its final decision, the employee may either: (1) file directly in federal court within 90 days, *id.* § 1614.407(a), or (2) appeal through the EEOC within 30 days, *id.* §§ 1614.401(a), 1614.402(a).

*Williams v. Wolf*, No. 19-cv-00652-JCS, 2019 WL 6311381, at *5 (N.D. Cal. Nov. 25, 2019).

The ADEA prohibits age discrimination against employees over the age of forty, as well as retaliation for protected activity.  It is subject to essentially the same administrative exhaustion requirement for federal employees as Title VII, unless an employee follows a separate track of

giving notice to the EEOC of discrimination and intent to sue, which Kuhl has not alleged that she pursued here. *Whitman v. Mineta*, 541 F.3d 929, 932 (9th Cir. 2008).

Both Title VII and the ADEA allow for claims based on a pervasively hostile work environment, as distinct from the more traditional claims based on specific adverse employment actions. A plaintiff may bring such a claim "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). As discussed in this Court's previous Order dismissing Kuhl's original Complaint, a hostile work environment claim can be based on a continuous course of harassing conduct that extends prior to the forty-five-day cutoff period, but it cannot rely on the sort of discrete adverse employment actions that could themselves have supported a claim for discrimination or retaliation if timely raised within forty-five days of when they occurred. ECF No. 29 at 14–16 (citing, *e.g.*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002); *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 892–93 (9th Cir. 2005)).

The Court's previous Order addressed Kuhl's apparent noncompliance with the Title VII and ADEA exhaustion requirement as follows:

> Other than initial contact "prior to 2008," for which the time to pursue a civil action has long since expired, Kuhl alleges that she first contacted an EEO counselor on February 18, 2019. Compl. at 5.[8] Under the applicable regulation, that contact would be timely only for adverse action that occurred no earlier than January 4, 2019, forty-five days before Kuhl contacted the counselor. 29 C.F.R. § 1614.105(a)(1).
>
> Kuhl's Complaint does not allege that any particular conduct occurred between January 4, 2019 and February 18, 2019. *See* Compl. at 5, 8–11. Instead, most of the conduct on which Kuhl relies occurred years earlier, and the latest incident discussed in her Complaint is a memorandum she received three days after her October 2018 adverse evaluation, stating that her "fee basis appointment would expire December 31." *Id.* at 9–10. If that is the last incident on which Kuhl bases her discrimination and retaliation claims, then her February 18, 2019 contact with a counselor was too late, and the claims must be dismissed.

---

[8] As noted above, Kuhl now alleges (and offers documents indicating) that her first contact with a counselor occurred on February 20, 2019, thus establishing a cutoff date of January 6, 2019 for conduct giving rise to the issues raised in that counseling.

11

ECF No. 29 at 13.

Although not addressed by the Secretary here, courts have held that acceptance and processing of an untimely administrative complaint does not serve to waive a subsequent defense in litigation that the administrative claim was filed too late, but have also noted that an explicit finding of timeliness by the agency or failure to appeal a finding of timeliness by the EEOC can establish waiver:

> "The mere receipt and investigation of a complaint does not waive objection to a complainant's failure to comply with the original filing time limit when the later investigation does not result in an administrative finding of discrimination." *Boyd v. United States Postal Service*, 752 F.2d 410, 413 (9th Cir. 1985); *but see Girard v. Rubin*, 62 F.3d 1244, 1247 (9th Cir. 1995) (agency expressly rejected complaint for untimeliness). "An agency waives a timeliness objection by making an express finding that the complaint was timely or failing to appeal an EEOC determination of timeliness." *Rose v. Mabus*, No. 08cv1471 BTM (BLM), 2010 WL 4918973, at *1 (S.D. Cal. Nov. 29, 2010) (*quoting Bruce v. United States Dept. of Justice*, 314 F.3d 71, 74 (2d Cir. 2002)). Equating the acceptance and investigation of a complaint with the waiver of any argument that the case is time-barred would "vitiate any incentive for [government] agencies to investigate and voluntarily remedy instances of discrimination, lest the agencies risk forfeiting a valid defense to a potential suit." *Belgrave v. Pena*, 254 F.3d 384, 387 (2d Cir. 2001) (internal quotation marks omitted).

*Higdon v. Mabus*, 5 F. Supp. 3d 1199, 1205 (S.D. Cal. 2014) (alteration in original).

If the Court were to consider the July 27, 2023 EEOC decision attached to Kuhl's original Complaint (but not included with her Amended Complaint), that document indicates that the VA initially dismissed Kuhl's administrative claim "for untimely EEO Counselor contact," but the EEOC reversed that dismissal in an earlier August 20, 2020 decision not included in the record here, and remanded to the agency for further processing, which resulted in the VA's decision rejecting the claim on its merits and the EEOC's decision affirming that conclusion on appeal. ECF No. 1 at 17. The Secretary's apparent "fail[ure] to appeal [the] EEOC determination of timeliness" waived any challenge to that conclusion here. *Bruce*, 314 F.3d at 74; *Girard*, 62 F.3d at 1247 (holding that where the EEOC "found that the complaint was timely," and the "IRS neither appealed nor refused to proceed," the IRS's subsequent investigation and processing served to waive an argument of untimeliness).

12

In those administrative proceedings, the "accepted claim was identified as alleging the Agency *subjected Complainant to a hostile work environment* based on sex (female), age (over 50), and in reprisal for protected activity when:"

1. On May 8, 2008, Complainant was terminated from federal service.
2. Since 2009, the Agency failed to increase Complainant's pay rate.
3. During April 2017, Complainant was informed that she was a 0.25 Full-time Equivalent (FTE) position for Urgent Care and would remain a temporary [appointment].
4. During October 2018, Complainant was rated as "Unsatisfactory" on her Ongoing Professional Practice Environment (OPPE).
5. On November 27, 2018, Complainant was notified via email that her fee basis appointment would expire on December 31, 2018.

ECF No. 1 at 17 (emphasis added).

In other words, the claim that the EEOC considered timely submitted in 2019 was one for a hostile work environment, based on specific incidents in 2008, 2009, 2017, and 2018. The EEOC's reasons for doing so are unclear from the current record, but the Secretary cannot now rely on arguments that Kuhl failed to initiate administrative proceedings for *that claim* on a timely basis. *See Girard*, 62 F.3d at 1247.

If Kuhl's Amended Complaint had asserted that claim—but to be clear, as discussed above, it asserts *no* claims—the hostile work environment claim considered by the EEOC would warrant dismissal in this Court. Such a claim cannot rely on adverse employment actions that would individually be actionable as discrete acts of discrimination, as discussed in the Court's previous Order. ECF No. 29 at 14–16 (citing, *e.g.*, *Porter*, 419 F.3d 892–93). All of the incidents listed in the EEOC's decision—termination or non-renewal of employment, compensation decisions, job classifications, and a negative performance review, *see* ECF No. 1 at 17—are the sort of discrete acts of alleged discrimination that courts have held cannot support a hostile work environment claim.

Other theories that Kuhl asserts (or at least at times has asserted) in this litigation

apparently were not before the EEOC. The EEOC therefore did not determine that Kuhl initiated timely contact with an EEO counselor with respect to those claims. To the extent that Kuhl asserts discrete discrimination or retaliation claims (as distinct from hostile work environment claims) under the ADEA or Title VII based on any incidents occurring before January 6, 2019, those claims are barred for failure to initiate the administrative process within forty-five days.

The Amended Complaint includes references to a research grant soon after Kuhl began working at the VA in 1998, a purportedly wrongful termination in 2008, and other incidents occurring years before she initiated any administrative process for the claims she now asserts. Even for the termination of her work in the allergy clinic, Kuhl herself alleges that she "receiv[ed] the email terminating [her] position" in November of 2018, Am. Compl. at 6, and attaches documentation confirming that date, *id.* at 16–17. Kuhl's mere belief that she could continue working after the December 31, 2018 termination date—apparently based on the possibility of an improvement plan, mentioned by a supervisor weeks before she received the termination notice, Am. Compl. at 2—does not change the fact that her employment at the allergy clinic apparently lapsed on that date.

Kuhl's allegations, if true, suggest that she was at least at times held to unfair (but not necessarily discriminatory) standards over many years of working at the VA. But the law required Kuhl to raise claims based on those incidents within forty-five days of when they occurred. The available record indicates that she failed to do so. Unless some basis for her claims occurred between January 6 and February 20, 2019, Kuhl cannot bring those claims now. In an abundance of caution, the Court grants Kuhl leave to amend if she can establish that a relevant act of discrimination or harassment, sufficiently related to the issue(s) she raised with a counselor, occurred in that time period, or if she can allege some other basis to satisfy or excuse the administrative exhaustion requirement.

Finally, the Court notes once again that Kuhl has not alleged any facts supporting the conclusion that her mistreatment was based on her age or sex, or any other protected class. *See* ECF No. 29 at 16. If Kuhl intends to pursue discrimination claims under Title VII or the ADEA, she must offer factual allegations supporting an inference that her alleged mistreatment was

discriminatory.

## IV. CONCLUSION

For the reasons discussed above, the Secretary's Motion to Dismiss Kuhl's Amended Complaint is GRANTED. The Amended Complaint is DISMISSED in its entirety for failure to assert any claim for relief. If Kuhl wishes to pursue this case, she must file a second amended complaint that complies with the Court's guidance and with other applicable rules and authority no later than May 8, 2025.

The further case management conference previously set for April 24, 2025 is CONTINUED to July 17, 2025 at 1:30 PM, to occur via Zoom webinar videoconference. Access instructions are available at https://cand.uscourts.gov/ljc/. The parties shall file a joint case management statement no later than July 10, 2025.

Kuhl is strongly encouraged to retain an attorney if she is able to do so. If Kuhl continues to pursue this case without an attorney, she is once again encouraged to contact the Court's Legal Help Center for assistance. Attorneys at the Legal Help Center cannot represent parties in litigation but can provide basic assistance to parties representing themselves. Kuhl may schedule an appointment by calling 415-782-8982 or emailing fedpro@sfbar.org.

**IT IS SO ORDERED.**

Dated: April 17, 2025

LISA J. CISNEROS
United States Magistrate Judge